In the Matter of the Arbitration between JAMES R. EISEN, as President of Dental Technicians Equity, Chapter 201, F.A.E.C.T., U.O.P.W.A., C.I.O., Petitioner, and UPTOWN DENTAL LABORATORIES, Respondent.

Supreme Court, Special Term, New York County, February 27, 1948.

*Nathan Weinstein* for petitioner.

*Weinstock & Tauber* for respondent.

HOFSTADTER, J. An employer moves to stay arbitration initiated by notice served by a labor union which asserts that the dispute between them is arbitrable under the terms of a collective bargaining agreement. This agreement was made on November 18, 1946. The agreement provided: " This agreement shall be in full force and effect for one year from the date first above written, and shall thereafter automatically continue from year to year, unless either party desires a change. In case either party desires. a change after one year, written notice shall be given to the other party thirty (30) days prior to the expiration of the said year, and a conference for a mutually satisfactory adjustment shall be arranged for within ten (10) days upon receipt of said notice. This agreement shall be binding upon the parties hereto, their successors and assigns, and shall survive any change of name, incorporation or reorganization."

The employer served notice under date of September 26, 1947, that he did not desire a renewal of the agreement at its expiration and would consider it terminated on its expiration date. The union served notice on the employer under date of September 30, 1947, that it would exercise its right to terminate the contract on its expiration date November 18th. Its notice stated further that it was given pursuant to section 101 of the Labor Management Relations Act, 1947 (amdg. National Labor Relations Act, § 8, subd. [d]; U. S. Code, tit. 29, § 158, subd. [d]).

The dispute which the union claims it is entitled to have arbitrated arises out of the layoff of certain employees on December 12, 1947, after the date of expiration fixed in the agreement.

The union claims that the notices of September 26 and September 30, 1947, did not effectually terminate the agreement because of the provisions of the Labor Management Relations

Act, 1947, commonly known as the Taft-Hartley Act. Since the employer has not questioned the applicability of the Federal statute to it, the court assumes that it is engaged in commerce as defined in the act and is subject to its provisions.

The particular provisions of the act which, the union contends, rendered nugatory the notices of termination of the collective bargaining agreement are found in section 8 of the National Labor Relations Act (as amd. by Labor Management Relations Act, 1947, § 101). They are:

" Sec. 8. (a) It shall be an unfair labor practice for an employer  *  *  *  (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a). *  *  *

" (d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification —

" (1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

" (2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

" (3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

" (4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing

contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later * * *."

The obvious purpose of the foregoing provisions is to prevent industrial strife on the expiration of an existing collective agreement by requiring the parties to negotiate for a renewal a reasonable time in advance of the fixed expiration date, and, on their inability to reach an agreement, to enlist the good offices of the appropriate mediation and conciliation service. Since failure to bargain collectively is made an unfair labor practice, the failure to comply with the directions of subdivision (d) of section 8 quoted above necessarily constitutes an unfair labor practice. Indeed, paragraph (4) of subdivision (d) of section 8 imposes a specific sanction on an employee who engages in a strike within the sixty-day period by depriving him of his status as an employee of the employer engaged in the particular labor dispute.

It is undisputed that other than the notices of September 26 and September 30, 1947, already referred to, neither the employer nor the union served any notice in purported compliance with the requirements of the act. Counsel for both parties argued at length on the effect of the failure to give the notice to the Federal Mediation and Conciliation Service pursuant to paragraph (3) of subdivision (d) of section 8. They stressed the express provision of paragraph (4) of subdivision (d) of section 8 which makes it an unfair labor practice not to continue a collective bargaining agreement in effect for a period of sixty days after the notice of termination prescribed in paragraph (1) of subdivision (d) of section 8 and the omission of an express like provision in the case of failure to give the notice to the Mediation and Conciliation Service in accordance with paragraph (3). While these differences might be material in an unfair labor practice hearing before the National Labor Relations Board, they do not aid in the solution of the question before the court. Whatever the seeming difference in the act in prescribing the consequences of the failure to give the two notices, it must be borne in mind that in neither case is there any explicit provision that the collective bargaining agreement is prolonged for failure to give either of the required notices.

The question, however, is not whether the parties, or either of them, have been guilty of an unfair labor practice. The only question is whether at the time of the layoff, of which the union complains, the collective bargaining agreement of Novem-

ber 18, 1946, was still in effect and the union was entitled to arbitration of the dispute arising out of this layoff.

The Taft-Hartley Act does not in terms state that the failure to comply with the requirements of subdivision (d) of section 8 shall operate to extend the collective bargaining agreement during the period that the failure remains unremedied. The act, as its title and the history of its predecessor, the Wagner Act, show, deals with unfair labor practices and provides for enforcement of its provisions by resort to the machinery afforded by the act. Enforcement of the act is secured by orders of the National Labor Relations Board. The act deals with unfair labor practices and affords appropriate relief through the National Labor Relations Board. Nowhere does the act attempt to impose on either management or labor an involuntary agreement. The act (National Labor Relations Act, § 8, subd. [d], as amd.) specifically declares that the obligation to bargain collectively " does not compel either party to agree to a proposal or require the making of a concession ". Even if it is assumed that the employer or union or both may have been guilty of an unfair labor practice in not having complied with subdivision (d) of section 8, there is nothing in the act which automatically extends the collective bargaining agreement beyond its expiration date because of such possible failure. The result is that the agreement was no longer in effect on December 12, 1947, and that the union is not entitled as of right to arbitrate the ensuing dispute.

It follows that the employer's motion for a stay of the arbitration should be granted.

Settle order.